## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Justin J. Dekker, and Michelle K. Dekker,    Case No. 21-cv-162 (MJD/TNL)

      Plaintiffs,

v.                         **ORDER**

Cenlar FSB, and CitiMortgage, Inc.,

      Defendants.

---

John H. Goolsby, Goolsby Law Office, LLC, 475 Cleveland Avenue North, Suite 212, St. Paul, MN 55104 (for Plaintiffs);

Ryan A. Sawyer and Nicholas O'Conner, Locke Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, IL 60606, Thomas Justin Cunningham, Locke Lord LLP, 777 South Flagler Drive, Suite 215-E, West Palm Beach, FL 33401, and Michael R. Sauer, Wilford Geske & Cook, P.A., 7616 Currell Boulevard, Suite 200, Woodbury, MN 55125 (for Defendant Cenlar FSB); and

Jenna K. Johnson, Ballard Spahr LLP, 2000 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, and Andrew J. Petrie and Matthew A. Morr, Ballard Spahr LLP, 1225 17th Street, Suite 2300, Denver, CO 80202 (for Defendant CitiMortgage, Inc.).

---

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiffs Justin J. Dekker and Michelle K. Dekker's Motion to Compel, ECF No. 64. A hearing on the motion was held on May 26, 2022. ECF No. 95. Attorney John H. Goolsby appeared on behalf of Plaintiffs. Attorney Ryan A. Sawyer appeared on behalf of Defendant Cenlar FSB ("Cenlar"). Attorney Jenna K. Johnson appeared on behalf of Defendant CitiMortgage, Inc. ("CMI"). The motions were taken under advisement.

1

## II. BACKGROUND

By Amended Complaint, Plaintiffs allege that they submitted a loss mitigation application to CMI, the servicer of their home mortgage loan, in 2017. Am. Compl. ¶ 16, ECF No. 28. CMI transferred the servicing of Plaintiffs' mortgage loan to Cenlar in April 2019. *Id*. ¶ 106. Plaintiffs bring several causes of action against CMI related to their loss mitigation application, including: (1) failure to determine loss mitigation options; (2) failure to determine loss mitigation options; (3) foreclosure referral without acting on loss mitigation application; (4) dual tracking; (5) failure to provide compliant notice of incomplete application and how to make it complete; (6) violations of the Minnesota Residential Mortgage Originator and Servicer Licensing Act; (7) loss mitigation procedures and dual tracking; (8) breach of duty of good faith and fair dealing; (9) failure to comply with Regulation X Error Resolution Procedures; (10) failure to comply with Regulation X Requests for Information; (11) failure to comply with Regulation X Continuity of Contact Requirements; (12) slander of title; (13) tortious interference with prospective contractual relations; (12) declaratory relief that notices of pendency to foreclose are void; and (13) unjust enrichment. *Id*. ¶¶ 303, 311, 318, 326, 333, 341, 354, 362, 371, 379, 388, 394, 395, 421, 430, 431, 445, 446, 456, 466, 469. Plaintiffs also bring several causes of action against Cenlar, including: (1) failure to determine loss mitigation options; (2) foreclosure referral without acting on loss mitigation application; (3) loss mitigation procedures and dual tracking; (4) failure to provide compliant notice of incomplete application and how to make it complete; (5) violations of the Minnesota Residential Mortgage Originator and Servicer Licensing Act; (6) breach of duty of good

faith and fair dealing; (7) violations of the Fair Debt Collection Practices Act; (8) failure to comply with Regulation X Error Resolution Procedures; (9) failure to comply with Regulation X Requests for Information; (10) failure to comply with Regulation X Continuity of Contact Requirements; (11) slander of title; (12) tortious interference with prospective contractual relations; (13) declaratory relief that notices of pendency to foreclose are void; and (14) unjust enrichment. *Id.* ¶¶ 346, 355, 363, 372, 380, 389, 395, 398, 412, 413, 422, 438, 446, 456, 466, 469.

### III. DISCUSSION

Plaintiffs move to compel responses to several interrogatories and document requests. The Court has broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Some threshold showing of relevance must be made[, however,] before parties are required to open wide the doors of discovery and to produce a variety of

information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  Further, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment); *see also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("[E]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." (quotation omitted)).  "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo*, 903 F.3d at 742 (quotation omitted); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii).  Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

### A.  Document Request Nos. 1 and 2

Plaintiffs' Document Request Nos. 1 and 2 are directed only to CMI and seek records related to the subject account.  Pl.'s Mem. in Supp. at 11, ECF No. 67.  Document Request No. 1 seeks "[a] life of loan history for the subject account," and Document Request No. 2 seeks "[a]ll collection notes for the subject account."  *Id.*  Plaintiffs argued

4

that CMI's responses were insufficient, and it should be compelled to either produce documents responsive to the requests or confirm that it is not withholding documents on the basis of a confidentiality objection. *Id*. at 14.

At the hearing, however, Plaintiffs stated that after further discussion between the parties, Plaintiffs have no reason to believe that CMI has any additional documents responsive to Document Request Nos. 1 and 2. Plaintiffs and CMI confirmed that these two document request disputes have been resolved. Accordingly, Plaintiff's motion is denied as moot with respect to Document Request Nos. 1 and 2.

**B. Document Request No. 5**

Plaintiffs' Document Request No. 5 seeks "[a]ll documents pertaining to any loss mitigation or loss mitigation application for the subject account, including without limitation the applicable investor guidelines for loan modifications and/or forbearance plans, and screen shots for any loan modification or forbearance started on the account" from CMI and Cenlar *Id*. Subject to a number of objections, CMI responded that "it will produce responsive, non-privileged documents in its possession or control, if any . . . ," and Cenlar responded that "responsive Bates Stamped documents, if any, will be produced . . . ." *Id*. at 14-15.

Plaintiffs assert that both "Defendants have produced some responsive documents but fail to state whether they are withholding others[ and] it appears that they are." *Id*. at 15. Specifically with respect to CMI, Plaintiffs allege that CMI produced a large number of documents on April 29, 2022 (according to CMI, 2,189 pages of documents), but this document production did not include the applicable investor guidelines. At the hearing,

CMI noted that it produced everything that was not privileged that could be found in Plaintiffs' files or associated with the loan that could easily be located by searching CMI's systems.  According to CMI, to the extent any investor guidelines existed, they would have been produced.  With respect to the documents related to the more general policies and procedures in place at CMI, CMI asserted that those documents are not saved in each and every individual loan folder and CMI is working on locating them.  CMI agreed that the documents are relevant and that they should be produced, but CMI requested additional time to do so.  At the hearing, Plaintiffs asked the Court to order CMI to produce the documents, specifically for the time period between fall 2017, when Plaintiffs initially applied for the loan modification, and January 2021, when the deal was signed, within 30 days.  CMI agreed to do so.

With respect to Cenlar and Document Request No. 5, Plaintiffs allege that Cenlar produced certain responsive documents and claimed that it would produce additional documents, but Plaintiffs have not received additional supplementation after much time. In response, Cenlar contends that a search of its system for correspondence that pertains directly to the loan with CMI results in approximately 47,000 documents, and Cenlar needs additional time to identify and produce responsive documents.

The Court will grant Plaintiff's motion in part with respect to Document Request No. 5.  Defendants shall supplement their document production to Document Request No. 5 and produce all documents, from fall 2017 to January 2021, pertaining to any loss mitigation or loss mitigation application for the subject account, including the applicable investor guidelines for loan modifications and/or forbearance plans, and screen shots for

any loan modification or forbearance started on the account.  If they have not already done

so, Defendants shall supplement their document production within 30 days of this Order.

To the extent the documents fall outside the fall 2017 to January 2021 time period or have

already been produced, Plaintiff's motion is denied.

### C. Document Request No. 7

Plaintiffs' Document Request No. 7 seeks "[a]ll records of communications with

Plaintiffs, including without limitation, all notes or logs created by [Cenlar or CMI] or any

predecessor servicer reflecting communications with Plaintiffs, all audio recordings and/or

transcripts of telephone calls with Plaintiffs, all correspondence to or from Plaintiffs, and

all monthly statements for the subject account."  Pl.'s Mem. in Supp. at 18.  At the hearing,

Plaintiffs stated that the only remaining issue with respect to this document request is

production of the audio recordings and/or transcripts of telephone calls with Plaintiffs.

Plaintiffs contend that they have not received certain recordings that Cenlar should have

produced, and if Cenlar cannot produce them, it should have to explain what it has done to

search for the phone calls and why some recordings are located more easily than others.

With respect to CMI, Plaintiffs argue that CMI has not produced any recordings between

Plaintiffs and CMI.  Plaintiffs request that the Court direct CMI to provide a definitive

statement as to whether any recordings exist, what has been done to search for them, and

whether any recordings were destroyed pursuant to a retention policy.

According to Cenlar, it has produced all call recordings and has nothing left to

produce responsive to this document request.  At the hearing, Cenlar agreed to provide

Plaintiffs with information about the process it used to search for the call recordings.

7

Cenlar also agreed to provide additional recordings to Plaintiffs to the extent that any additional recordings are located.  According to CMI, it does not have any call recordings to produce responsive to this document request.  At the hearing, CMI agreed to confirm that no recordings exist and provide Plaintiffs with an explanation about the process it used to search for them or if the recordings would have fallen outside the document retention policy period.

The Court will grant Plaintiff's motion in part with respect to Document Request No. 7.  To the extent it has not done so already, within 30 days, Defendants shall provide a definitive statement to Plaintiffs that they have produced any and all call recordings.  Defendants shall also provide information about the search process used to locate the call recordings and whether any recordings would have fallen outside a document retention policy period.  Defendants shall also provide any call recordings responsive to the request that have been located since the hearing.  Plaintiff's motion is otherwise denied.  While Plaintiffs may believe they are missing certain call recordings from Cenlar, for example, that does not mean that Defendants have not complied with their obligation to respond.  A party cannot be compelled to produce what it does not have.  *See, e.g.*, *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains that it does not have the documents requested in Requests for Production Nos. 3 and 4. If Equifax does not have the documents in its possession, custody, or control, it cannot be compelled to produce them."); *see also Farmers Ins. Exch.*, 2012 WL 12894845, at *5 ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist.").

8

### D.  Document Request No. 9

Plaintiffs' Document Request No. 9 seeks "[a]ll documents involving communication(s) or contact(s) between [Cenlar and CMI] or [their] attorneys and the other parties or former parties in this action or their attorneys, that pertain to the subject account."  Pl.'s Mem. in Supp. at 23.  At the hearing, Plaintiffs argued that this document request includes not only documents involving communications about Plaintiffs' loan specifically, but also communications related to the pool of loans that Plaintiffs' loan was in.  According to Plaintiffs, certain discovery, including recordings produced by Cenlar through discovery, leads Plaintiffs to believe that there was a broader problem and pattern and practice of violations by Defendants rather than an isolated violation against Plaintiffs. Plaintiffs argue that Defendants appear to be withholding responsive documents and they should be compelled to produce all responsive documents within 30 days.  *Id*. at 24-25.  At the hearing, Plaintiffs requested that Cenlar produce documents dating back to February 1, 2019, instead of April 1, 2019, when the loan transfer occurred, because Plaintiffs believe that Cenlar may have had involvement with a relevant pool of loans before the transfer. Plaintiffs requested that Cenlar and CMI produce documents through June 2021, as this case involves claims through June 2021.

In response, Cenlar agrees that communications that directly discuss the loss mitigation on Plaintiffs' loan are relevant.  Cenlar contends that it is working to identify those communications and will produce them once they have been identified and reviewed for privileged content.  Cenlar's Mem. in Opp. at 5, ECF No. 93.  Cenlar agreed to produce those documents dating back to February 1, 2019, as requested by Plaintiffs.  Cenlar argues,

however, that to the extent Plaintiffs' document request is not limited solely to communications about Plaintiffs' loan and more generally involve the pool of loans that Cenlar subservices for CMI, the request is overly broad. At the hearing, Cenlar argued that there are likely thousands of loans in the same pool of loans as Plaintiffs', and the potential number of documents would be thousands. Cenlar argued that this is an individual lawsuit concerning an individual loan, not a class action lawsuit, and the potential number of documents Plaintiffs seek would be disproportionate, have nothing to do with the loan at issue in this case, and impact privacy concerns regarding other loans. Cenlar contended that Plaintiffs have not shown any basis for needing that information. CMI similarly contends that it has produced all documents responsive to this document request that relate specifically to Plaintiffs' account, but any documents unrelated to the servicing of Plaintiffs' account is overly broad.

Based on the record before the Court, the relevance of the documents involving communications related to the pool of loans that Plaintiffs' loan was in, as opposed to the documents pertaining to Plaintiffs' loan specifically, is minimal. Plaintiffs claim that communications related to the pool of loans is relevant under the Real Estate Settlement Procedures ACT (RESPA) because the discovery could demonstrate a pattern and practice of mortgage servicing abuses. Plaintiffs base this on a belief that there is a pattern and practice of violations by Defendant after reviewing recordings produced by Cenlar through discovery. While Plaintiffs state generally that certain discovery demonstrates that Defendants were engaging in a pattern and practice of mortgage servicing abuses, they lack any supportable basis for the Court to order such broad discovery which amounts

10

essentially to a fishing expedition in hopes of supporting unsubstantiated accusations of pattern and practice. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (The proponent of discovery must make a "threshold showing of relevance . . . before the parties are required to open wide the doors of discovery" in order to limit "fishing expeditions"). Further, "the burden and expense of [such] proposed discovery outweighs its likely benefit" in this case." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Responding to this overly broad request would require significant additional work, including searching through thousands of loans and related documents, which would be disproportionate to the claims at issue. *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("[E]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." (quotation omitted)).

Thus, Plaintiffs' motion is granted in part with respect to Document Request No. 9. To the extent it has not done so already, within 30 days, Defendants shall produce all responsive documents involving communications about Plaintiffs' loan specifically. Plaintiff's motion is otherwise denied as to Document Request No. 9. Defendants need not produce communications related to the pool of loans that Plaintiffs' loan was in.

### E. Document Request Nos. 10 and 13

Plaintiffs' Document Request No. 10 seeks "[a]ll documents relating to the transfer of loan servicing from [CMI] to [Cenlar]." Pl.'s Mem. in Supp. at 25. Plaintiffs' Document Request No. 13 seeks "[a]ll documents relating to [CMI's] relationship with [Cenlar],

including without limitation all contracts, notices of termination or non-renewal of contracts, invoices, training or instruction materials, documentation of expectations, benchmark/guidelines for servicer performance, performance evaluations or assessments, quality assurance materials, and records of either party's concerns with the relationship or either party's performance there under." *Id*. at 26. Plaintiffs contend that the requests are relevant because "the relationship between Defendants is relevant to Plaintiffs' claim that Cenlar acted as CMI's agent, and that CMI is therefore liable for Cenlar's violations." *Id*. at 27. Further, Plaintiffs argue that the requests are relevant because "Count VI alleges that Defendants failed to perform in conformance with their written agreements with . . . each other." *Id*. at 28.

Defendants object to the requests as vague, ambiguous, overly broad, irrelevant, not proportional to the needs of the case, and burdensome. *Id*. at 25-27. Defendant objects specifically to producing the nearly 650-page subservicing agreement between Cenlar and CMI. Cenlar's Mem. in Opp. at 7. Cenlar contends that the subservicing agreement "includes detailed and competitively sensitive information regarding the relationship between CMI and Cenlar that goes far beyond the limited loss mitigation matters at issue in this lawsuit." Cenlar further agues that "[t]he broad scope of this request shows how disproportionate and burdensome the request is in relation to the needs of this case." *Id*. As CMI contends, the requests seek "each and every document that is connected with CMI and Cenlar's relationship, including documents that have no bearing on whether or not Cenlar was acting as CMI's agent in its servicing of [Plaintiffs'] [l]oan." CMI's Mem. in Opp. at 9.

The Court will grant Plaintiffs' motion in part insofar as the Court will order Defendants to produce a redacted copy of the subservicing agreement between Cenlar and CMI. The subservicing agreement, however, need only include the information related to Cenlar and CMI's relationship with respect to the loss mitigation matters at issue in this lawsuit. The Court finds that this information is "relevant to [a] party's claim or defense" under Rule 26(b)(1), proportional to the needs of the case, and not unduly burdensome to produce. All other information in the subservicing agreement, including issues irrelevant to loss mitigation matters and other confidential or sensitive information, may be redacted.

Plaintiffs' motion is otherwise denied. Specifically, Defendants need not produce "[a]ll documents relating to [CMI's] relationship with [Cenlar], including without limitation all contracts, notices of termination or non-renewal of contracts, invoices, training or instruction materials, documentation of expectations, benchmark/guidelines for servicer performance, performance evaluations or assessments, quality assurance materials, and records of either party's concerns with the relationship or either party's performance there under." *See* Pl.'s Mem. in Supp. at 26. Plaintiffs' requests reveal a desire for broad discovery, amounts to a fishing expedition, and will impose too great of a burden on Defendants. Further, this information is either irrelevant or too untethered to the claims in the litigation that requiring its production would be disproportionate to the needs of the case.

### F. Document Request No. 14

Plaintiffs' Document Request No. 14 asks Defendants to produce "[a]ll documents relating to [CMI and Cenlar's] relationship with Wells Fargo Bank, N.A., including

13

without limitation all contracts, notices of termination or non-renewal of contracts, invoices, training or instruction materials, documentation of expectations, . . . ." Pl.'s Mem. in Supp. at 29. Plaintiffs' request, like Document Request No. 9 discussed *supra*, seeks not only documents that relate specifically to Plaintiffs' loan, but also to the pool of loans that Wells Fargo is the investor and Cenlar subservices for CMI.

At the hearing, Cenlar agreed to produce documents that exist between Cenlar and Wells Fargo specific to Plaintiffs' loan. Cenlar stated that it was searching for those documents and would produce them within 30 days. To the extent that Plaintiffs' request seeks documents that apply more broadly to the pool of loans, Cenlar objected to the request as overly broad and unduly burdensome. Similarly, CMI agreed to produce documents responsive to the request that exist between CMI and Cenlar specific to Plaintiffs' loan. CMI argued that Plaintiffs' request is otherwise overly broad because Plaintiffs seek any document that has to do with the relationship between CMI and Wells Fargo, not just documents related to the loan in question.

The Court agrees with Defendants. Plaintiff's motion will be granted in part and, to the extent they have not done so already, within 30 days, Defendants shall produce documents between themselves and Wells Fargo related specifically to Plaintiffs' loan. Plaintiff's motion is otherwise denied. While documents between Defendants and Wells Fargo related specifically to Plaintiffs' loan are relevant and should be produced, the Court finds that documents related to the pool of loans on which Wells Fargo is the investor and Cenlar subservices for CMI are not. The Court finds that Plaintiffs have not sufficiently articulated the relevance of the information related to the pool of loans to their claims. *See*

14

Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).   Plaintiffs claim that the documents are relevant because (1) Count VI alleges that CMI failed to perform in conformance with its written agreements with . . . Wells Fargo; (2) a central issue is whether Defendants had all the documents and information from Plaintiffs that were required for Defendants to determine their loss mitigation options; and (3) the documents would show whether Defendants exercised reasonable diligence in obtaining documents or information from Wells Fargo. Pl.'s Mem. in Supp. at 30.   But based on the record before the Court, the relevance of this information is marginal at best.   *See* Fed. R. Civ. P. 26(b)(1) (considering "the importance of the discovery in resolving the issues").   Further, having compared the burden of responding to Document Request No. 14 in the manner Plaintiffs seek to the benefit such information may have to the claims asserted in this case, the Court finds that the information sought is disproportionate to the needs of this case.   *See id.* (consider "whether the burden or expense of the proposed discovery outweighs its likely benefit").   Accordingly, Plaintiff's motion is granted in part and denied in part with respect to Document Request No. 14.

### G. Document Request No. 15 and Second Set of Requests for Production Nos. 1 and 2

Plaintiffs' Document Request No. 15 seeks "[a]ll documents reflecting [CMI and Cenlar's] servicing guidelines and/or procedures, including but not limited to guidelines and/or procedures relating to the provision of loan modifications, workouts, and/or forbearance agreements, and guidelines and/or procedures relating to foreclosures."   Pl.'s Mem. in Supp. at 31.   Plaintiffs' Second Set of Request for Production to Cenlar No. 1

seeks "[a]ll documents reflecting [Cenlar's] servicing guidelines and/or procedures for processing and responding to Qualified Written Requests, Notices of Error, or Requests for Information." *Id*. at 32. Plaintiffs' Second Set of Request for Production to Cenlar No. 2 seeks "[a]ll documents reflecting [Cenlar's] servicing guidelines and/or procedures for maintaining continuity of contact for borrowers." *Id*. at 33.

At the hearing, Plaintiffs stated that Defendants are apparently in the process of identifying and producing responsive documents. Plaintiffs requested that Cenlar produce responsive documents dating back to February 1, 2019, and CMI produce responsive documents through June 2021. Cenlar agreed to produce its policies and procedures concerning loss mitigation during the time it services the loan through the date the final application was approved. Cenlar argued that it should not need to produce documents for the entire time period it was servicing the loan as any policies in effect before Cenlar became the servicer on Plaintiffs' loan or after the loan modification was offered are not relevant. CMI agreed with Cenlar's position, and argued that it should only have to produce documents related to the loss mitigation servicing guidelines.

The biggest point of contention between the parties on these requests is whether procedures related to foreclosures should be produced. At the hearing, Plaintiffs argued that because alleged wrongful threats of foreclosures are a central part of this case, guidelines related not only to loss mitigation but also foreclosures are relevant to the case. Defendants agreed to produce any policies or procedures where foreclosure policies relate to loss mitigation. For example, if a policy or procedure explains how foreclosures are handled when there is a loss mitigation application pending, that policy would be produced.

16

Defendants argued that Plaintiffs' request for all foreclosure policies, however, is overly broad.

The Court agrees with Defendants. While Cenlar and CMI's servicing guidelines and procedures relating to loss mitigation are relevant, Plaintiffs have not articulated sufficiently how any guidelines and policies related to foreclosures are relevant to their claims. The Court finds Defendants' proposal to produce foreclosure policies as they relate to loss mitigation to be an appropriate compromise. Accordingly, Plaintiffs' motion is granted in part and denied in part. To the extent they have not produced them already, Defendants shall provide responsive documents to Plaintiffs' Document Request No. 15 and Plaintiffs' Second Set of Request for Production Nos. 1 and 2 within 30 days. Defendants need not produce their procedures on foreclosures. Defendants shall, however, produce any policies or procedures that explain how foreclosures are handled when there is a loss mitigation application pending.

**H. Document Request No. 16 and Interrogatory No. 4**

Plaintiffs' Document Request No. 16 seeks "[a]ll complaints (civil, regulatory, or administrative) against [Cenlar or CMI], and all judgments, final orders, or settlements thereon . . . ." Pl.'s Mem. in Supp. at 35. Plaintiffs later served Interrogatory No. 4 on Defendants, telling Defendants that in lieu of responding to Document Request No. 16, they could instead:

> Identify by case name, case number, and jurisdiction all cases against [Cenlar or CMI], excepting the present case, that involved allegations of:
> - Failure to determine or advise a borrower of loss mitigation options;

17

- Foreclosure referral without acting on a loss mitigation application;
- Dual tracking;
- Failure to provide a compliant notice of an incomplete application and how to make it complete;
- Misleading statements in connection with a borrower's loan modification;
- Directly contacting a borrower who was represented by an attorney;
- Threatening foreclosure without a present right to possession of the property;
- Failure to properly respond to a Qualified Written Request, Notice of Error, or Request for Information;
- Failure to maintain continuity of contact for borrowers; or
- Improperly inflating an Unpaid Principal Balance.

Pl.'s Mem. in Supp. at 36-38.

Plaintiffs contend that Defendants have not produced documents responsive to Document Request No. 16 or answered Interrogatory No. 4. *Id*. at 38. Plaintiffs argue that the requested information is relevant to both pattern and practice and punitive damages, as it is "firmly established that prior lawsuits are relevant to punitive damages." *Id*. Further, Plaintiffs contend that regardless of whether a lawsuit has been filed, it would be evidence of reckless disregard in support of punitive damages if Defendants had received many complaints and failed to investigate the issue further. Plaintiffs argue they should be able to bring in some of those people to testify to the jury about what Defendants did to them and decide whether there was a pattern and practice.

Cenlar contends these requests are overly broad and unduly burdensome because they "seek far more than actual evidence of pattern and practice or prior acts, and they don't provide any reasonable temporal limit to the request." Cenlar's Mem. in Opp. at 10.

Cenlar further argues that the relevance of such request is tenuous at best, while the burden it places on Cenlar is extreme.  *Id*. at 12.  For instance, Cenlar complains that Plaintiffs seek not only judgments entered against Cenlar, but also any complaints and settlement agreements dating back to forever.  Similarly, CMI argues that Plaintiffs' requests "seek irrelevant information, are unduly burdensome, and are utterly disproportionate."  CMI's Mem. in Opp. at 8.  Specifically, CMI contends that an attorney would need to search every court's system to find cases, which is unduly burdensome and unnecessary, especially because Plaintiffs' counsel has access to the courts' systems and can conduct the search himself.  At the hearing, CMI contended that Plaintiffs' request does not provide any temporal or geographical boundaries.  For example, CMI argues that the request is overbroad because it is not limited specifically to Minnesota cases, federal cases, federal cases in the District of Minnesota, and is not limited to any sort of timeframe, among other reasons.

The Court finds that Plaintiffs' Document Request No. 16 and Interrogatory No. 4 are overly broad.  Plaintiffs request that Defendants produce every single complaint (civil, regulatory, or administrative), judgment, final order, or settlement, encompassing any issue that Defendants have ever been involved in, over an unlimited period of time.  These requests are not only overly broad but would also be unduly burdensome for Defendants to respond to, and the burden to Defendants outweighs Plaintiffs' need for the information. The Court will not compel Defendants to respond to such a facially overbroad request.  *See, e.g., Heim v. BNSF Ry. Co.*, No. 8:13CV369, 2014 WL 6949044, at \*8 (D. Neb. Dec. 8, 2014) (finding the plaintiff's request for "production of all documents, companywide for

the last six years" concerning "complaints, inquiries, investigations, lawsuits, administrative proceedings, or alternative dispute resolution proceedings" was "both obvious and excessive on its face").

The Court will, however, require Defendants to produce a more limited category of information responsive to these discovery requests. Specifically, Cenlar and CMI shall supplement its responses to Document Request No. 16 and/or Interrogatory No. 4 by producing or identifying (1) any judgments entered against them, (2) in any federal district court in the United States, (3) dated between September 16, 2017, and September 16, 2022, and (4) which involved allegations of:

- Failure to determine or advise a borrower of loss mitigation options;
- Foreclosure referral without acting on a loss mitigation application;
- Dual tracking;
- Failure to provide a compliant notice of an incomplete application and how to make it complete;
- Misleading statements in connection with a borrower's loan modification;
- Directly contacting a borrower who was represented by an attorney;
- Threatening foreclosure without a present right to possession of the property;
- Failure to properly respond to a Qualified Written Request, Notice of Error, or Request for Information;
- Failure to maintain continuity of contact for borrowers; or
- Improperly inflating an Unpaid Principal Balance.

The Court finds that this information is relevant, narrowly tailored, not overly broad, and not unduly burdensome to produce. Defendant's motion is otherwise denied.

Accordingly, Defendant's motion to compel a response to Document Request No.

20

16 and answer to Interrogatory No. 4 is granted in part and denied in part as set forth herein.

### I.  Document Request No. 23

Plaintiffs' Document Request No. 23 seeks "[a] plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above" from CMI.  Pl.'s Mem. in Supp. at 41-42.  CMI contends that it is investigating whether such a "glossary" document exists.  CMI's Mem. in Opp. at 8.  To the extent it does, CMI will produce it.  To the extent it does not, CMI argues that it cannot produce something it does not have.  *Id.*  CMI argues that Plaintiffs may seek this information through other means, such as an interrogatory or at a deposition.  *Id.*  At the hearing, Plaintiffs asked that the Court order CMI to produce, within 30 days, such a glossary document if it exists or provide a definitive statement that CMI has searched for the document and does not have it.

The Court will grant in part and deny in part this motion.  The Court agrees with Plaintiffs that, to the extent it has not done so already, within 30 days, CMI shall either produce the glossary document or provide a definitive statement that CMI has searched for the document and does not have it.  Plaintiff's motion is otherwise denied.  A party cannot be compelled to produce what it does not have.  *See, e.g.*, *Edeh*, 291 F.R.D. at 337; *Farmers Ins. Exch.*, 2012 WL 12894845, at *5.

### J.  Interrogatory No. 5

Plaintiffs' Interrogatory No. 5 asks Cenlar and CMI to "[s]tate [their] net worth, gross revenue, and net revenue for fiscal and/or calendar years 2018, 2019, 2020, and

2021." Pl.'s Mem. in Supp. at 43.  Plaintiffs claim that the Defendants' financial statuses are relevant to a determination about the amount of punitive damages.  *Id*.  At the hearing, Plaintiffs agreed that Defendants could wait to produce information regarding their financial status until after summary judgment, assuming Plaintiffs' claims for punitive damages survive summary judgment, so long as Defendants agree to produce the information at that time.

Cenlar contends that "the net worth of Cenlar is irrelevant to [Plaintiffs'] claim." Cenlar's Mem. in Opp. at 14.  CMI similarly contends that Plaintiffs "have no reason for needing this information that could not be resolved by entering into a reasonable stipulation."  CMI's Mem. in Opp. at 9.  At the hearing, Defendants argued that to the extent the Court finds the information relevant and orders Defendants to produce it, they should not be required to do so until after summary judgment because the issue becomes moot if punitive damages will not be presented to the jury.

"A defendant's net worth is a relevant consideration in the award of punitive damages."  *Edeh*, 2013 WL 1799006, at *3 (citing *Schaub v. VonWald*, 638 F.3d 905, 926 (8th Cir. 2011); *Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 570 (8th Cir. 1998)).  Additionally, Defendants have not shown that the requested financial information is not reasonably likely to lead to the discovery of admissible evidence concerning the scope of any punitive damages.  Thus, the Court "finds that the relevance and benefit of the information outweighs the burden of production."  *Edeh*, 2013 WL 1799006, at *3. The Court, however, agrees with Defendants that they should not be required to produce the requested financial information until after summary judgment, assuming Plaintiffs'

claims for punitive damages survive summary judgment.  *See id*. ("[D]iscovery of this type of sensitive and proprietary information is best deferred until such a time as the court determines whether the plaintiff many maintain a viable punitive damages claim.").

Accordingly, Plaintiffs' motion is granted in part with respect to Interrogatory No. 5.  Defendants shall supplement their answers to Interrogatory No. 5 by stating their net worth, gross revenue, and net revenue for fiscal and/or calendar years 2018, 2019, 2020, and 2021.  Defendants, however, need not produce that information now.  Defendants shall only produce that information in the event that Plaintiffs' claims for punitive damages survive summary judgment.  If they do, Defendants shall supplement their answers to Interrogatory No. 5 within 30 days of the Court's order on summary judgment.

### K. Interrogatory Nos. 1, 2, and 3, and Second Set of Requests for Production to CMI Nos. 1 and 2

Plaintiffs' Interrogatory No. 1 to CMI seeks information about "each date on which [CMI] received any loss mitigation application from Plaintiffs."  Pl.'s Mem. in Supp. at 44.  Interrogatory No. 2 seeks information about "each date on which [CMI] received a complete loss mitigation application from Plaintiffs."  *Id*.  Interrogatory No. 3 seeks information about "each date on which [CMI] referred the subject mortgage loan to an attorney for foreclosure."  *Id*. at 45.  Plaintiff's Second Set of Requests for Production No. 1 asks CMI to produce "[a]ll documents reflecting [CMI's] servicing guidelines and/or procedures for maintaining continuity of contact for borrowers," and No. 2 asks CMI to produce "[a]ll reports to administrative agencies, regulatory agencies, shareholders or corporate officers since reflecting overall incidents or assessments of known problems of:

Threatening foreclosure without a present right to possession of the property; or Failure to maintain continuity of contact for borrowers." *Id*.

At the hearing, Plaintiffs noted that they have received what they need in response to Interrogatory No. 3, and that issue has been resolved. As far as Interrogatory Nos. 1 and 2, Plaintiffs contend that CMI simply referred to documents produced but did not answer the interrogatories specifically by identifying the specific dates requested. In response, CMI contends that it responded fully to the interrogatories by referring Plaintiffs to specific documents produced by CMI. CMI's Mem. in Opp. at 6-7. With respect to Plaintiffs' Second Set of Requests for Production No. 1, the parties agreed that CMI will produce responsive documents from September 2017 to April 1, 2019, within 30 days. As for Plaintiffs' Second Set of Requests for Production No. 2, CMI objects to the request as overbroad as it does not have any kind of temporal limitations.

Plaintiffs' motion is granted in part and denied in part. Plaintiffs' motion to compel CMI to supplement its answers to Interrogatory Nos. 1, 2, and 3 is denied. By referring Plaintiffs to documents produced, CMI answered the interrogatories fully. *See* Fed. R. Civ. P. 33(d)(1) (permitting party to answer interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" when "the answer to [the] interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and . . . the burden of deriving or ascertaining the answer will be substantially the same for either party"). Plaintiffs' motion to compel CMI to supplement its response to Plaintiff's Second Set of Requests for Production No. 1 is granted. The

Court finds that CMI's servicing guidelines and/or procedures for maintaining continuity of contact for borrowers are relevant to Plaintiffs' claims, and it would not be unduly burdensome for CMI to produce these documents.  To the extent it has not done so already, CMI shall supplement its response within 30 days.  Lastly, Plaintiffs' motion to compel CMI to supplement its response to Plaintiff's Second Set of Requests for Production No. 2 is denied.  CMI is not required to produce "[a]ll reports to administrative agencies, regulatory agencies, shareholders or corporate officers . . . ," as such request is overly broad and not sufficiently tailored to be proportional to the needs of the case.

### L.  Request for Attorney Fees

Lastly, Plaintiffs argue that they should be awarded attorney fees and costs pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).  Pl.'s Mem. in Supp. at 45-46.  Plaintiffs argue that Defendants should be ordered to pay Plaintiffs' attorney fees and costs in making their motion to compel "[g]iven the plain relevance of Plaintiffs' requests, the complete lack of merit in Defendants' objections, the enormous weight of authorities cited [in Plaintiffs' memorandum], and the lengthy period of time Defendants have had to properly amend and supplement their responses." *Id*. at 46.

Rule 37 provides for expenses in connection with a motion to compel under certain circumstances.  *See generally* Fed. R. Civ. P. 37(a)(5).  The Court has granted Plaintiffs' motion to compel in part and denied it in part.  Under Rule 37(a)(5)(C), when a motion has been granted in part and denied in part, expenses are permitted, but not required.  Here, it is the Court's view that any award of attorney fees and costs would have little, if any, positive effect, and would serve only to embolden further the recipient party, entrench the

parties in their respective positions, and increase the costs of litigation, making an award of fees unjust under the circumstances.  Thus, Plaintiffs' request for attorney fees and costs is denied, and each party shall bear its own costs and attorney fees.

## IV. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Compel, ECF No. 64, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Each party shall be responsible for its own costs and attorney fees.  *See* Fed. R. Civ. P. 37(a)(5)(C).

3. All prior consistent orders remain in full force and effect.

4. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: September __20__, 2022

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota


*Dekker et al. v. Cenlar FSB et al.*
Case No. 21-cv-162 (MJD/TNL)